■ In the Matter of NAQUAN L.G. GRAHAM WINDHAM FAMILY AND CHILDREN'S SERVICES et al., Respondents; CAROLYN C., Appellant. (Proceeding No. 1.) In the Matter of TANZANIA N.C. GRAHAM WINDHAM FAMILY AND CHILDREN'S SERVICES et al.,

Respondents; CAROLYN C., Appellant. (Proceeding No. 2.) [31 NYS3d 214]—

Appeal from an order of the Family Court, Queens County (Margaret P. McGowan, J.), dated January 30, 2013. The order denied the mother's motion to vacate the judicial surrenders of her parental rights executed on January 20, 2011. By decision and order dated July 2, 2014, this Court remitted the matter to the Family Court, Queens County, for a reconstruction hearing with respect to certain proceedings, and a reconstruction hearing has been completed.

Ordered that the order is affirmed, without costs or disbursements.

The subject children have been in kinship foster care since 2008 based upon allegations of neglect by the mother. In 2010, a proceeding was commenced to terminate the mother's parental rights. On January 20, 2011, in connection with the termination proceeding, the mother appeared with counsel in Family Court and voluntarily surrendered her parental rights as to each child. On December 7, 2012, she moved by order to show case to vacate the judicial surrenders on the ground that the Family Court failed to substantially comply with Social Services Law § 383-c (3) (b). The Family Court denied the motion and the mother appeals.

Social Services Law § 383-c (3) (b) defines the procedures to be followed for the execution of judicial surrenders. Specifically, it requires the court to inform the parent of the right to legal counsel and to obtain supportive counseling, and to inform the parent of the consequences of the surrender, including the permanent loss of custodial rights and the immediate and irrevocable effect of the surrender. After informing the parent that the surrender becomes final and irrevocable upon its execution and acknowledgment, the court must provide the parent with a copy of the written instrument.

Pursuant to Social Services Law § 383-c (5) (c), the surrender instrument must contain a provision appearing in bold print at the beginning of the instrument that "the surrender becomes final and irrevocable immediately upon execution and acknowledgment, and that the parent cannot bring a case in court to revoke the surrender or to regain custody of the child" (Social Services Law § 383-c [5] [c]). Notably, the statute does not provide for any penalty or remedy in the event the court fails to strictly adhere to its provisions regarding the information to be provided to a surrendering parent in open court. It does

specify, however, that an action or proceeding may be brought in the event of fraud, duress, or coercion in the execution or inducement of the surrender (*see* Social Services Law § 383-c [6]). The statute further provides that "[n]o action or proceeding may be maintained by the surrendering parent or guardian for the custody of the surrendered child or to revoke or annul such surrender except as [specifically] provided herein" (Social Services Law § 383-c [6] [d]; *see Matter of Robert Jordan G. [Robert D.]*, 97 AD3d 576 [2012]; *Matter of Gino Z.*, 4 AD3d 631, 632 [2004]).

Here, the mother executed written surrenders, which, in compliance with Social Services Law § 383-c (5) (c), stated in bold capital letters that the surrenders were "immediate" and "final," and that she "cannot bring a case in court to cancel or change the surrender or to regain custody." The written instruments acknowledged the mother's rights to legal counsel and to supportive counseling. They also conditioned the surrenders upon the foster placement of the children with a specified relative, and included a provision that the mother be permitted contact with the children "as mutually agreeable by the parties." Thereafter, the mother, who was represented by legal counsel, was questioned by the Family Court in an in-court voir dire as to her understanding of the surrenders, her voluntariness in executing them, her mental clarity, her consultation and satisfaction with counsel, her understanding of the finality of the surrenders, the foster care and anticipated adoption by her relative, her visitation issues, and her signature on the written surrenders.

When the mother moved nearly two years later to vacate the surrenders, such action was prompted by difficulties encountered by the parties in working out the mother's visitation with the children in a "mutually agreeable" manner. The order to show cause filed by the mother focused primarily upon the failure of the Family Court, during its voir dire of the mother, to specifically inform her of the right to supportive counseling.

A clear reading of the statute indicates that the failure by a court to orally advise a surrendering parent in open court of his/her right to supportive counseling is not a ground upon which a parent may rely when seeking to vacate or revoke a surrender. Pursuant to Social Services Law § 383-c (6) (d), the only available grounds for such relief are fraud, duress, or coercion. No such allegations are present in this case. In addition, the mother signed a written instrument which informed her of, inter alia, the finality of the surrender procedure and the right to supportive counseling, and she acknowledged in

her voir dire that her surrender was knowing and voluntary. The written surrender instruments fully complied with Social Services Law § 383-c, and the Family Court's voir dire substantially addressed the rights, procedures, and effect of the surrenders. Therefore, while it would have been better practice for the Family Court, during the voir dire of the mother, to discuss all the aspects of her judicial surrender, including, as applicable here, her right to supportive counseling and every right that was being surrendered, the Family Court nevertheless properly denied the mother's motion to vacate the judicial surrenders of her parental rights executed on January 20, 2011. Dillon, J.P., Sgroi and Barros, JJ., concur.

Hall, J., dissents, and votes to reverse the order appealed from and grant the mother's motion to vacate the judicial surrenders of the parental rights executed on January 20, 2011, with the following memorandum: The majority concludes, based on the language of Social Services Law § 383-c (6) (d), that a judicial surrender of parental rights may only be vacated on the grounds of fraud, duress, or coercion. While that conclusion is supported by the statutory language, here, the Family Court's colloquy was misleading and fundamentally unfair to the mother. Based on this record, I cannot conclude that the mother knowingly and intelligently surrendered her parental rights. Accordingly, I respectfully dissent.

Pursuant to Social Services Law § 383-c (3) (b), at the time a parent appears before a judge to execute and acknowledge a surrender of parental rights, the judge shall inform the parent, inter alia, of the parent's right to obtain supportive counseling and "of the consequences of such surrender, including informing such parent that the parent is giving up all rights to have custody, visit with, speak with, write to or learn about the child, forever, unless the parties have agreed to different terms." Here, at the time the mother executed the judicial surrenders of her parental rights, the Family Court did not inform the mother of her right to supportive counseling or of the consequences of the surrenders, including that she was giving up all rights to have custody, visit with, speak with, write to or learn about the children, forever.

Rather than inform the mother of the important rights she was giving up by executing the surrenders, the Family Court focused on other matters, which led the mother to believe that she would have some rights to visit the children after executing the surrenders. For instance, the Family Court noted that the judicial surrenders were conditioned upon a specified relative (hereinafter the foster mother) adopting the children, and

asked the mother if she would like to be notified if the adoption does not go through. The mother indicated that she would like to be so notified, and the court stated that she would be notified of important matters prior to the adoption. The court also stressed the importance of the agency having the mother's correct address and telephone number.

The Family Court also asked the mother if there was any visitation to work out between her and the foster mother. The mother indicated that there was. In my view, this colloquy reasonably lead the mother to believe that, even after executing the surrenders, she would have rights to visitation with the children. Significantly, the court did not inform the mother that she would have no right to visit the children if she could not work out a visitation agreement with the foster mother.

The Family Court's colloquy focused on what would happen after the mother executed the surrenders, not the rights she was giving up by executing the surrenders. The court did not make clear to the mother that, by executing the surrenders, she was giving up all rights to have custody, visit with, speak with, write to or learn about the children, forever, as required by Social Services Law § 383-c (3) (b). Instead, the court's questions suggested that the mother would have some rights with respect to the children, even after the execution of the surrenders. This was manifestly unfair to the mother, who was likely focused on what the court was telling her during the proceeding, as opposed to the language of the written surrenders.

Moreover, even the written surrenders contained language that was misleading to the mother. In the section titled "Post-Surrender/Post Adoption Communication or Contact Agreement," the written waivers stated, "[i]t is further understood that I shall have such contact as is mutually agreeable between the parties." This language incorrectly suggested that the mother had a post-surrender right to contact with the children based on terms or a schedule that was mutually agreeable by the parties. It made it seem as though the mother had a right to contact the children independent of the foster mother's consent. In reality, however, the mother had no right to contact the children without the foster mother's consent. If the foster mother denied the mother visitation, the mother would have no right to see the children. The mother was never advised that her visitation with the children would be entirely in the control of the foster mother. Indeed, the record reveals that the foster mother denied the mother visitation with the children shortly after the surrenders were executed, but the mother and

foster mother subsequently resolved their differences, and the mother enjoyed visitation with the children for a substantial period of time thereafter. The mother filed her motion to vacate the surrenders only after the foster mother again denied her visitation with the children.

Under these circumstances, it is my opinion that the mother did not knowingly and intelligently execute the surrenders with a clear understanding of their consequences (*cf. Matter of Brittany R. [Annemarie R.]*, 130 AD3d 1271 [2015]).

I am also troubled by the statute's narrowly defined grounds of "fraud, duress or coercion in the execution or inducement of a surrender" (Social Services Law § 383-c [6] [d]) as being the sole grounds for vacating a judicial surrender of parental rights. Following the majority's interpretation of the statute to its logical conclusion, a parent may not vacate the surrender of his or her parental rights, even where the court has said nothing to the parent to ensure that he or she understands the important rights being given up by executing the surrender, and no colloquy exists on the record to ensure that the surrender was made knowingly, voluntarily, and intelligently, so long as the surrender was not procured by fraud, duress, or coercion. In such cases, the parent will be left with no remedy where the court has completely failed in its obligations pursuant to Social Services Law § 383-c (3) (b).

For these reasons, I respectfully dissent, and vote to reverse the order appealed from and grant the mother's motion to vacate the judicial surrenders of her parental rights.